**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LAUREN SAXON and CHARLES SAXON,   ) | |
|           ) | |
|     Plaintiffs,         ) | |
|           ) | |
| v.           ) | Case No. CIV-24-00714-JD |
|           ) | |
| SAFECO INSURANCE COMPANY OF     ) | |
| AMERICA, et al.,         ) | |
|           ) | |
|     Defendants.      ) | |

**ORDER**

Before the Court is Defendant American Economy Insurance Company's

("AEIC") Motion for Summary Judgment ("Motion"). [Doc. No. 34]. Plaintiffs Lauren

Saxon and Charles Saxon (collectively "Plaintiffs") filed a Response. [Doc. No. 51].

AEIC filed a Reply. [Doc. No. 55]. For the reasons outlined below, the Court grants in

part and denies in part the Motion.

I.      **MATERIAL UNDISPUTED FACTS**

Plaintiffs have an AEIC insurance policy ("the Policy") covering their home.

[Doc. No. 34 ¶ 1; Doc. No. 51 ¶ 1].[1] Plaintiffs submitted a claim under the Policy related

to storm damage to their house and subsequent damage related to the remediation of the

---

[1] In Plaintiffs' Response, they have two sections of facts, both broken into paragraphs. To indicate citation to Plaintiffs' Responses to AEIC's Statement of Material Facts, the Court will cite to the paragraph number alone. To indicate citation to Plaintiffs' Statement of Additional Material Facts, the Court will cite to the page number, followed by the paragraph number.

When the Court cites to a page number in this order, it will use page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

damage. [Doc. No. 34 ¶ 2; Doc. No. 51 ¶ 2]. A wind and hailstorm caused a tree to fall on the roof of Plaintiffs' house. [*Id.*].

This lawsuit pertains to three areas of damage to Plaintiffs' house. First, the tree that fell onto Plaintiffs' house damaged the roof. Second, the mitigation of water damage within Plaintiffs' house by a third party caused additional damage. Third, following the storm that damaged Plaintiffs' house, Plaintiffs' HVAC controller caught fire and ceased working. Additionally, Plaintiffs' claims relate to Additional Living Expense Coverage under the Policy.

### A.        The damage to Plaintiffs' roof

Following the wind and hailstorm, AEIC received a report that a tree had penetrated the roof, insulation, and drywall of Plaintiffs' house; the house did not have power; and the house was uninhabitable. [Doc. No. 34 ¶ 9; Doc. No. 51 ¶ 9]. AEIC inspected Plaintiffs' roof and provided a report reflecting the results of the inspection. [Doc. No. 34 ¶¶ 26–27; Doc. No. 51 ¶¶ 26–27]. The report indicated tree-related damage on the back and left slopes of the home and did not find wind or hail damage to the roof. [Doc. No. 34 ¶ 27; Doc. No. 51 ¶ 27].

After receiving AEIC's estimate for repairs to the roof, Plaintiffs' contractor called AEIC's adjuster, Lenore Chiarello, and stated that the roof had more damage than reflected in AEIC's estimate. [Doc. No. 34 ¶ 37; Doc. No. 51 ¶ 37]. Chiarello asked the contractor to send his estimate and supporting information. [*Id.*]. Plaintiffs sent AEIC an estimate that included a total roof replacement with removal and replacement of all roof decking. [Doc. No. 34 ¶ 47; Doc. No. 51 ¶ 47]. The estimate for repairing the roof was

$38,313.44. [*Id.*]. Chiarello reviewed photographs submitted by Plaintiffs' contractor in support of the estimate and concluded the evidence did not support a full roof replacement. [Doc. No. 34 ¶ 53; Doc. No. 51 ¶ 53]. AEIC's estimate ultimately included $16,925.87 to repair Plaintiffs' roof. [Doc. No. 34 ¶ 56; Doc. No. 51 ¶ 56].

Plaintiffs requested a second inspection of their roof, noting they did not believe AEIC had anyone get on their roof. [Doc. No. 34 ¶ 58; Doc. No. 51 ¶ 58]. AEIC coordinated a second inspection. [Doc. No. 34 ¶ 59; Doc. No. 51 ¶ 59]. The report from the second inspection stated that the inspection did not reveal wind or hail damage and noted prior repairs that demonstrated Plaintiffs had repaired damage from the fallen tree. [Doc. No. 34 ¶ 60; Doc. No. 51 ¶ 60].

During the recent sale of Plaintiffs' house, the buyer provided Plaintiffs with an estimate of $16,995 for full replacement of their roof and a roof inspection report, which stated that the roof was at the end of its functional life. [Doc. No. 34 ¶¶ 67–68; Doc. No. 51 ¶¶ 67–68].

### B.      Asbestos damage related to water mitigation

Following the storm that damaged Plaintiffs' house, AEIC contacted Stanley Steemer International, Inc. ("Stanley Steemer") to assist with moisture mitigation inside Plaintiffs' house. [Doc. No. 34 ¶ 11; Doc. No. 51 ¶ 11]. Stanley Steemer reported that the home was built in 1957; the home was recently remodeled, thus alleviating asbestos concerns; and emergency mitigation would begin once the power to the home was restored. [Doc. No. 34 ¶ 13; Doc. No. 51 ¶ 13]. After inspection, AEIC's adjuster reported the following interior damage: damage to drywall, insulation, and rafters in the

3

attic; damage to plaster in a second story bedroom; and water damage to the ceiling in the primary bedroom and nursery on the first floor. [Doc. No. 34 ¶ 20; Doc. No. 51 ¶ 20]. The adjuster estimated a total of $22,828.54 to repair the damage to the interior. [Doc. No. 34 ¶ 22; Doc. No. 51 ¶ 22]. After applying recoverable depreciation and Plaintiffs' deductible, AEIC issued a payment for $11,555.67. [*Id.*].

During the remediation process, Stanley Steemer cut out fifty-six square feet of ceiling in the primary bedroom. [Doc. No. 34 ¶ 23; Doc. No. 51 ¶ 23]. Plaintiffs informed AEIC that Stanley Steemer had removed the ceiling without testing for asbestos. [Doc. No. 34 ¶ 38; Doc. No. 51 ¶ 38]. Plaintiffs hired someone to test for asbestos, and the house tested positive for asbestos. [*Id.*]. Plaintiffs' contractor subsequently emailed the adjuster (1) a letter from Earth Tech Enterprises, Inc. stating that it had performed air monitoring and all samples were below the detectable limit for asbestos, and (2) a quote for asbestos remediation. [Doc. No. 34 ¶ 40; Doc. No. 51 ¶ 40]. Plaintiffs also sent the adjuster a list of personal property that asbestos had contaminated. [Doc. No. 34 ¶ 42; Doc. No. 51 ¶ 42]. AEIC issued payments to Plaintiffs of $425 for asbestos testing and $12,745 for asbestos abatement. [Doc. No. 34 ¶ 46; Doc. No. 51 ¶ 46].

Regarding Plaintiffs' personal property, Stanley Steemer communicated to AEIC that they covered all of Plaintiffs' personal property before removing the ceiling. [Doc. No. 34 ¶ 57; Doc. No. 51 ¶ 57]. They also stated they ran air scrubbing in the work area. [*Id.*]. Stanley Steemer declined to accept liability for Plaintiffs' personal property. [*Id.*]. AEIC denied coverage for Plaintiffs' claim for their personal property because Stanley Steemer's improper workmanship caused the loss. [Doc. No. 34 ¶ 65; Doc. No. 51 ¶ 65].

## C.    Damage to Plaintiffs' HVAC

Plaintiffs notified AEIC that their HVAC unit was not working. [Doc. No. 34 ¶ 16; Doc. No. 51 ¶ 16]. An electrician told Plaintiffs that the electrical portion of the unit was "shorting out." [*Id.*]. The inspection report of Plaintiffs' HVAC unit found that the cause of the unit's failure was "wear and tear." [Doc. No. 34 ¶ 30; Doc. No. 51 ¶ 30]. The report concluded that the system did not fail due to a high voltage surge, lightning, or something similar. [*Id.*]. The report estimated repairs for the unit to cost $1,592.48. [*Id.*]. Defendant's adjuster drafted a letter and notified Plaintiffs that they would not cover the HVAC repair because of an uncovered cause of loss. [Doc. No. 34 ¶¶ 31–32; Doc. No. 51 ¶¶ 31–32].

Plaintiffs subsequently requested coverage of the HVAC unit, asserting that a report from Tulsa Air Specialists indicated a power surge did cause the damage. [Doc. No. 34 ¶ 44; Doc. No. 51 ¶ 44]. The report estimated the cost of repair to be $2,162. [*Id.*]. Plaintiffs provided the report for AEIC's review. [Doc. No. 34 ¶ 62; Doc. No. 51 ¶ 62]. AEIC reviewed the report and provided a supplemental opinion that wear and tear caused the burned wires referenced in the Tulsa Air Specialists' report. [Doc. No. 34 ¶ 63; Doc. No. 51 ¶ 63]. AEIC then advised Plaintiffs, again, that they would not cover repairs to the HVAC unit. [Doc. No. 34 ¶¶ 64–65; Doc. No. 51 ¶¶ 64–65].

## D.    Additional Living Expense Coverage

The Policy contained an Additional Living Expense Coverage, which provides coverage for necessary living expenses incurred as a result of a covered loss rendering the residence or a portion of the residence unhabitable. [Doc. No. 34 ¶ 8; Doc. No. 51 ¶ 8].

As discussed above, when AEIC first learned of the damage to Plaintiffs' house, the house did not have power and was uninhabitable. [Doc. No. 34 ¶ 9; Doc. No. 51 ¶ 9]. The storm that initially damaged Plaintiffs' home occurred on June 17, 2023. [Doc. No. 34 ¶ 2; Doc. No. 51 ¶ 2]. On June 22, 2023, AEIC received a report that the power was back on at Plaintiffs' house but that Plaintiffs were out of town until June 26. [Doc. No. 34 ¶ 15; Doc. No. 51 ¶ 15]. On July 24, 2023, AEIC received an email from the vendor assigned to assist Plaintiffs with alternate living accommodations stating that Plaintiffs had been unresponsive to their attempts at contact. [Doc. No. 34 ¶ 36; Doc. No. 51 ¶ 36]. On September 25, 2023, a third-party vendor assigned to set up alternate living accommodations for Plaintiffs also communicated to AEIC that Plaintiffs had been unresponsive. [Doc. No. 34 ¶ 52; Doc. No. 51 ¶ 52].

## II.    **BACKGROUND**

Plaintiffs initiated this lawsuit in the District Court of Oklahoma County against Defendants AEIC, Safeco Insurance Company of America ("Safeco"), Liberty Mutual Insurance Company ("Liberty"), and Stanley Steemer.[2] [Doc. No. 1-1]. AEIC removed the case to this Court based upon diversity jurisdiction. [Doc. No. 1]. Plaintiff brings claims of breach of contract and breach of the duty of good faith and fair dealing against

---

[2] Plaintiffs' claims against Safeco and Liberty are based on alter ego liability and are subject to a separate motion for summary judgment. [*See* Doc. No. 1-1 ¶ 2 ("[T]he separation between these entities may be disregarded and treated as one for the purpose of breach of contract and bad faith."). Plaintiffs settled their claims against Stanley Steemer. [Doc. Nos. 58, 60].

AEIC and requests punitive damages. [Doc. No. 1-1 ¶¶ 31–44; *id.* ¶ 50 (punitive damages)].

Plaintiffs' claims relate to the following alleged breaches by AEIC. First, Plaintiffs claim that AEIC breached the Policy by failing to replace their entire roof. [*Id.* ¶ 25]. Additionally, Plaintiffs argue that AEIC's coverage of only a partial roof replacement breaches the Policy's coverage for Matching Undamaged Siding, Roofing, and Windows ("the Matching Provision") because the partial replacement "left the remainder of the roof in a condition that does not match at all with the repaired portion of the Plaintiffs' roof." [*Id.* ¶ 26]. Second, Plaintiffs claim AEIC breached the Policy by failing to replace Plaintiffs' personal property contaminated by asbestos due to Stanley Steemer's water remediation efforts. [*Id.* ¶ 23]. Third, Plaintiffs state AEIC breached the Policy by failing to pay for repairs to Plaintiffs' HVAC unit. [*Id.* ¶ 24]. Lastly, Plaintiffs assert that AEIC breached the Policy by failing to provide them Additional Living Expense benefits. [*Id.* ¶ 27]. Plaintiffs urge that AEIC's breaches of the Policy constitute bad faith. [*See id.* ¶ 29].

## III.    <u>STANDARD OF REVIEW</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (citation modified); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment."). A dispute about a material fact is genuine if a rational trier of fact could find in favor of the nonmoving party on the evidence presented. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018); *see also Anderson*, 477 U.S. at 248 (explaining a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

In applying this standard, the Court "review[s] the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)). "While we view the record in the light most favorable to the party opposing summary judgment, 'the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Phillips v. Calhoun*, 956 F.2d 949, 950 (10th Cir. 1992) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)). Ultimately, review of a district court's ruling on summary judgment is "from the perspective of the district court at the time it made its ruling, ordinarily limiting . . . review to the materials adequately brought to the attention of the district court by the parties." *SEC v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022) (citation omitted).

IV.    ANALYSIS

A.    **The Court grants in part and denies in part AEIC's Motion regarding Plaintiffs' breach of contract claim.**

The Court begins by analyzing whether AEIC is entitled to summary judgment on Plaintiffs' breach of contract claim. To do so, the Court must examine each basis for AEIC's alleged breach: (1) the failure to provide a full roof replacement, (2) the denial of Plaintiffs' claim for personal property with asbestos damage, (3) the denial of Plaintiffs' claim for repairs to their HVAC unit, and (4) the failure to advise Plaintiffs of Additional Living Expense benefits under the Policy.

Because the Court's subject matter jurisdiction is based upon diversity, the Court applies Oklahoma law to Plaintiffs' claims. *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1301 (10th Cir. 2022) ("In a case based on federal diversity jurisdiction, the law of the forum state governs."). To establish that AEIC breached the Policy, Plaintiffs must prove: "(1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach." *Digit. Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843. "The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly." *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 12, 812 P.2d 372, 376. When a provision is clear, consistent, and unambiguous, the Court will accept its plain and ordinary meaning, and the contract will be enforced to carry out the intentions of the parties. *Id.* Here, the parties do not assert that the Policy is ambiguous or that any of the terms require the

Court's interpretation.

### 1.    Coverage for Plaintiffs' roof repairs

The Court begins with Plaintiffs' claim that the coverage AEIC provided for repairs to Plaintiffs' roof constitutes a breach of the Policy. Plaintiffs argue that AEIC's handling of the claim constituted a breach in two ways. First, AEIC's refusal to provide coverage for a full roof replacement constitutes breach. [Doc. No. 51 at 16, ¶ 28; *id.* at 25]. Second, AEIC breached the Matching Provision of the Policy. [*Id.* at 16, ¶ 27; *id.* at 25].

Regarding coverage for the roof repairs, the parties do not dispute that the Policy covered the damage inflicted upon Plaintiffs' roof but instead dispute the extent of repairs needed to remediate that damage. [*See* Doc. No. 34 at 21 ("Damage to the roof and interior of the home caused by a tree felled by a windstorm are within the category of covered accidental direct physical loss to the property.")]. On one hand, AEIC contends that they provided adequate coverage to repair the roof. AEIC paid Plaintiffs $16,925.87 to repair their roof. [Doc. No. 34-26 at 7 (estimated cost of covered repairs)]. Although AEIC based that amount upon the adjuster's conclusion the roof did not warrant a full replacement, AEIC contends that amount was adequate, even if Plaintiffs desired a full roof replacement, because Plaintiffs paid a similar amount to replace the roof when they sold the house in 2025. [Doc. No. 34-2, Claim Notes, at 3–4, Sept. 26, 2023 entry (summarizing basis for concluding full roof replacement was not necessary); Doc. No. 51-1, Lauren Saxon Dep. at 21–22, 257:17–258:11]. On the other hand, Plaintiffs' contractor estimated $38,313.44 to repair Plaintiffs' roof, which included a full roof

10

replacement. [Doc. No. 34-20 at 9 (Sparks, Inc.'s estimate of repairs)]. Accordingly, a genuine issue of material fact exists regarding the adequate amount of coverage to repair Plaintiffs' roof, and the Court denies summary judgment on this issue.

Turning next to the Matching Provision in the Policy, Plaintiffs contend that AEIC did not provide adequate coverage to comply with the terms of this provision. [Doc. No. 51 at 24–25]. The Matching Provision provides that AEIC will provide coverage to address a mismatch in roof surfacing due to repair of a covered loss. [Doc. No. 34-1, the Policy, at 48]. Plaintiffs provide evidence that the repairs to the roof resulted in a mismatch of roof surfacing that ultimately required them to replace the entire roof. [Doc. No. 51 at 15, ¶ 26, Doc. No. 51-2, Hancock Report, at 3]. The issue is whether AEIC complied with the terms of the Policy:

**20. Matching of Undamaged Siding, Roof Surfacing, and/or Windows**

We will pay, up to the amount shown in your Policy Declarations, for the cost you incur to replace the existing undamaged siding, roof surfacing, and/or windows due to mismatch between the existing undamaged siding, roof surfacing, and/or windows on the dwelling or other structure(s) which sustained the loss creating the mismatch.

This coverage only applies:

a. if the siding, roof surfacing, and/or windows on the dwelling or other structure(s) is damaged by a peril not excluded under Building Property Losses We Do Not Cover; and

b. if the replacement siding, roof surfacing, and/or windows do not match the existing undamaged siding, roof surfacing, and/or windows; and

c. if the mismatch is due to:

(1) fading, weathering, oxidizing, or color of materials;

11

(2) texture or dimensional differences; or

(3) obsolescence or unavailability of the siding, roof surfacing materials, and/or windows;

In addition, coverage only applies to undamaged siding, roof surfacing, and/or windows on the dwelling and/or other structure(s) that sustained the damage.

**SPECIAL CONDITIONS**

When undamaged siding, roof surfacing, and/or windows are replaced due to a mismatch as part of a covered loss, we will pay to replace with materials that are substantially similar to the materials used to repair or replace the damaged exterior siding, roof surfacing, and/or windows so there is a reasonably uniform appearance with the repair of the damaged areas.

[Doc. No. 34-1, the Policy, at 48]. Plaintiffs argue that AEIC breached the Matching Provision by refusing to fully replace the roof and that AEIC "left the Saxons with a mismatched, piecemeal roof that was unreasonable and in violation of industry standards, especially considering the Plaintiffs had a $20,000 Matching Benefit in their Policy." [Doc. No. 51 at 25]. AEIC, however, asserts that Plaintiffs never notified AEIC that they were unable to secure matching shingles and that "the record demonstrates the matching provision was never made relevant during the claim handling process." [Doc. No. 55 at 4; Doc. No. 34 at 23].

The Court concludes that a genuine issue of material fact is present regarding whether AEIC breached the Matching Provision. The parties present competing summary judgment evidence regarding whether a mismatch in roof surfacing was an issue during the claims handling process. AEIC presents summary judgment evidence that its estimate for roof repairs included a line item for market price of shingles in Plaintiffs' area of the like kind and quality. [Doc. No. 34 at 22; Doc. No. 34-26 at 6 (line item for shingles in

12

estimate)]. Plaintiffs counter that, despite the estimate reflecting shingles of like kind and quality to Plaintiffs' existing shingles, they had a concern about a mismatch due to the relative age of the shingles, which they state they expressed to AEIC. [*See* Doc. No. 51-1, Lauren Saxon Dep. at 17, 118:7–118:25 (Plaintiff Lauren Saxon's testimony that they were worried about the mismatch in the roof surfacing and had communicated that to AEIC); Doc. No. 51-5, Brett Neal Aff. ¶ 8 ("Sparks engaged in correspondence with Liberty Mutual about our concerns of only doing a partial repair and concerns with matching shingles.")]. Plaintiffs also requested reinspection of their roof after their contractor had repaired the roof damage. [Doc. No. 34-2, Claim Notes, at 3, Oct. 3, 2023 entry]. AEIC hired Hancock Claims Consultants to reinspect the roof, and Hancock issued a report with supporting photographs. [Doc. No. 34-28, Hancock Report; Doc. No. 51-2, Hancock Report]. Plaintiffs contend the photographs demonstrate the mismatch. [*See* Doc. No. 51 at 18, ¶ 60]. Indeed, one of the photographs submitted as part of the report indicates a mismatch in shingles. [*See* Doc. No. 51-2, Hancock Report, at 3]. AEIC, however, argues that Plaintiffs did not express concern about the mismatch. [Doc. No. 55 at 4–5]. The scope of Hancock's report indicates that the area of concern prompting the reinspection was whether the repairs had adequately addressed the storm damage, not whether the roof surfacing displayed a mismatch. [Doc. No. 34-28 at 3 (summarizing Hancock's findings regarding storm damage to the roof)]. AEIC also presents summary judgment evidence that Plaintiffs exacerbated the mismatch by repairing the roof with a patch repair instead of a full-slope replacement, for which AEIC provided coverage. [Doc. No. 55 at 4–5; Doc. No. 55-1, Chiarello Dep. at 3–4, 180:7–

13

180:21 (indicating AEIC approved coverage for a slope replacement); 191:9–191:22 (expressing opinion that Plaintiffs patch-repaired their roof)]. In sum, the above summary judgment evidence demonstrates that a genuine issue of material fact exists regarding whether AIEC breached the Matching Provision by failing to provide coverage to replace the non-damaged shingles to prevent a mismatch. Summary judgment is, therefore, inappropriate.

2.      Coverage for Plaintiffs' personal property contaminated by asbestos

The Court next turns to Plaintiffs' claim that AEIC's denial of their claim for personal property contaminated by asbestos breached the Policy. As outlined above, Stanley Steemer's repair of water damage to Plaintiffs' ceiling caused asbestos contamination to Plaintiffs' personal property, and AEIC denied coverage for that personal property. [Doc. No. 51-17 (email explaining denial)]. The stated reason for AEIC's denial was that they do not cover faulty workmanship. [*Id.* at 2]. The Policy states that it does not cover "faulty, inadequate, or defective" "workmanship, repair, [or] construction." [Doc. No. 34-1, the Policy, at 40]. Additionally, the Policy does not cover loss to personal property caused directly or indirectly by faulty repairs. [*See id.* at 42 ("We do not cover losses caused directly or indirectly by any of the Building Property Losses We Do Not Cover.")]. Plaintiffs argue that AEIC cannot insulate itself because Stanley Steemer "acted as an arm of AEIC." [Doc. No. 51 at 25]. In support of this argument, Plaintiffs state that AEIC had Stanley Steemer inspect Plaintiffs' home, directed their work, and paid them directly. [*Id.* at 25 n.4 ("Plaintiff had no choice of vendor.")].

14

To support their position that Stanley Steemer acted as an arm of AEIC, AEIC would have necessarily had to delegate a contractual obligation under the Policy to Stanley Steemer. But the Policy does not obligate AEIC to repair the insured property. The Policy provides coverage for accidental, direct, physical loss to Plaintiffs' home and does not exclude wind or storm damage. [Doc. No. 34-1 at 37]. Plaintiffs do not cite provisions of the Policy that require AEIC to assume responsibility to repair their property. Instead, the Policy requires AEIC to *cover* the cost of repairs to the property. Accordingly, Stanley Steemer did not serve as an arm of AEIC by performing repairs to the property. AEIC cites the Policy's exclusion for faulty workmanship as its basis for not paying for the personal property damaged during the course of Stanley Steemer's repairs, and Plaintiffs cite no basis the exclusion should not apply, other than that Stanley Steemer acted as an arm of AEIC. [Doc. No. 34 at 20–21; Doc. No. 51 at 25–26]. Because the Court does not conclude that AEIC delegated performance of any of its contractual obligations under the Policy to Stanley Steemer, the Court finds Plaintiffs' argument unsustainable.

Equally unavailing is Plaintiffs' argument that, by paying to remediate other asbestos contamination within the house, AEIC "admitt[ed] its liability for the asbestos issue[.]" [Doc. No. 51 at 26]. AEIC advised Plaintiffs that the Policy covers asbestos remediation. [Doc. No. 34-2, Claim Notes, at 9, Aug. 10, 2023 entry ("advised per TM there is asbestos coverage and to pls send estimate for WM to review.")]. The Court's inquiry is whether AEIC's denial of coverage for Plaintiffs' personal property breached the Policy. Without any argument pertaining to why the Policy's exclusion does not apply

15

to Plaintiffs' claim relating to its personal property or presentation of a genuine issue of material fact, the Court finds that AEIC is entitled to judgment as a matter of law. Accordingly, the Court concludes that AEIC is entitled to summary judgment on Plaintiffs' breach of contract claim on this ground.

### 3.    Coverage for repairs to Plaintiffs' HVAC unit

The Court turns next to Plaintiffs' claim that AEIC breached the Policy by failing to cover damage to its HVAC unit. Plaintiffs' HVAC unit failed following the storm that damaged their home. [Doc. No. 34-2, Claim Notes, at 13, June 27, 2023 entry]. AEIC denied their claim for repairs because the adjuster's inspection indicated the HVAC unit failed because the control unit failed due to wear and tear. [Doc. No. 34-9, HVAC Assessment Report, at 6; Doc. No. 34-10 at 2 (email advising of denial)]. Plaintiffs had their HVAC unit inspected, and the inspection concluded that a power surge during the storm caused wires to melt, burning the circuit board. [Doc. No. 51-9, Tony Goertzen Aff. ¶ 4]. Because the parties each attribute the damage to the HVAC to a different cause, one covered under the Policy and one not covered, the Court concludes a genuine, material fact exists regarding whether AEIC breached the Policy by denying coverage for repairs to the HVAC unit. Thus, the Court denies summary judgment on this claim.

### 4.    Coverage for Additional Living Expenses

Finally, the Court addresses Plaintiffs' claim that AEIC breached the Policy by failing to advise them of coverage for Additional Living Expenses. The Policy provides that "[i]f a loss covered under this section makes that part of the residence premises where you reside uninhabitable, we cover Additional Living Expense, meaning the

16

necessary increase in living expenses you incur so that your household can maintain its normal standard of living." [Doc. No. 34-1, the Policy, at 43]. As AEIC points out, the Policy requires that Plaintiffs actually incurred Additional Living Expenses for AEIC to provide coverage. [Doc. No. 34 at 23]. Plaintiffs do not assert that they incurred such expenses or submitted a claim for coverage. Instead, Plaintiffs argue that "AEIC denied this claim constructively by failing to inform Plaintiffs of the full benefit or how they could submit expenses." [Doc. No. 51 at 26]. Plaintiffs do not cite Oklahoma caselaw that supports their position that a failure to advise an insured of benefits amounts to a constructive denial of benefits. [*See id.*]. The summary judgment evidence demonstrates that AEIC tried to help Plaintiffs secure alternate living arrangements. [*See* Doc. No. 34-2, Claim Notes, at 6, Sept. 15, 2023 entry ("Vendor Assignment (Type: Temporary Housing Vendors) created for MyKey Accommodations, Inc Assignment Notes: Good morning, insured will need temp housing. Right now we are looking at the max two weeks during investigation into their furniture replacement. Limits are $115,740 per Incident. Two adults and a one year old. thank you!")]. Plaintiffs admit they were unresponsive to those efforts. [*See* Doc. No. 51 ¶ 36 (not disputing AEIC's statement that "the vendor had attempted to reach the Plaintiffs multiple times and the Plaintiffs had been unresponsive"); *id.* ¶ 52 (responding "undisputed" in response to AEIC's statement that "MyKey advised they had made 'many attempts' to contact Plaintiffs that were unanswered")]. Because Plaintiffs have presented no summary judgment evidence that (1) they incurred living expenses covered under the Policy or that (2) AEIC denied a

17

claim for coverage for Additional Living Expenses, the Court concludes AEIC is entitled to summary judgment on this claim.

>    **B.**    **The Court grants in part and denies in part AEIC's Motion regarding Plaintiffs' bad faith claims.**

AEIC also moves for summary judgment on Plaintiffs' bad faith claims related to the alleged breaches of the Policy. Plaintiffs assert three grounds that AEIC acted in bad faith: (1) AEIC failed to advise Plaintiffs regarding the Matching Provision in the Policy and coverage for Additional Living Expenses; (2) AEIC failed to compensate them for the personal property contaminated by asbestos; and (3) AEIC disregarded the opinions of Plaintiffs' contractors. [Doc. No. 51 at 28–32].

"Under Oklahoma law, '[a]n insurer has a non-delegable duty of good faith while performing the functions of claims management, adjustment and settlement.'" *MPower, Inc. v. Phila. Indem. Ins. Co.*, 695 F. Supp. 3d 1302, 1311 (W.D. Okla. 2023) (alteration in original) (quoting *Wathor v. Mut. Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 16, 87 P.3d 559, 563 n.6, *as corrected* (Jan. 22, 2004)). "This duty requires the insurer to take positive steps to adequately investigate, evaluate, and respond to its insureds' claims." *Id.* The essence of a bad faith action "is the insurer's unreasonable, bad-faith conduct . . . and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 28, 121 P.3d 1080, 1093, *as corrected* (June 22, 2005) (alteration in original) (quoting *McCorkle v. Great Atl. Ins. Co.*, 1981 OK

128, ¶ 21, 637 P.2d 583, 587). "The decisive question is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, ¶ 14, 824 P.2d 1105, 1109 (citation modified) (quoting *Buzzard v. McDanel*, 1987 OK 28, ¶ 10, 736 P.2d 157, 159). The focus is on the insurer's knowledge and belief during the time the claim is reviewed. *Id.* When a legitimate dispute exists between the insurer and insured, that dispute negates a bad faith claim as a matter of law. *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993) ("Numerous Oklahoma cases have ruled as a matter of law that no reasonable inference of bad faith arises when an insurer denies a claim solely because of the existence of a legitimate dispute.").

If the insurer establishes the existence of a legitimate dispute, the burden shifts to the insured to produce additional evidence of bad faith. *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006). Oklahoma precedent identifies two categories of objectively unreasonable conduct that support a jury question on bad faith. The first is a sham justification, where the insurer "d[oes] not actually rely on that legitimate basis but rather denie[s] the claim for an illegitimate reason, such as a 'systematic, bad faith scheme of canceling policies without . . . good cause.'" *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012) (third alteration in original) (quoting *Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1214 (10th Cir. 1998)) (applying Oklahoma law). The second is inadequate investigation because the "duty to timely and properly investigate an insurance claim is intrinsic to an insurer's contractual duty to timely pay a valid claim." *Brown v. Patel*, 2007 OK 16, ¶ 11, 157 P.3d 117, 122 (citation

modified).

### 1.    AEIC's failure to advise regarding coverage

The Court first examines whether AEIC is entitled to summary judgment regarding whether it committed bad faith by failing to advise Plaintiffs regarding coverage under the Matching Provision and coverage for Additional Living Expenses. In support of their claim that AEIC's failure to advise of coverage amounts to bad faith, Plaintiffs cite to section 1250.5 of Oklahoma's Uniform Claims Settlement Practices Act ("UCSPA"), which requires an insurer to fully disclose facts about coverage and benefits under a policy when pertinent to a claim and prohibits an insurer from knowingly misrepresenting facts regarding coverage that are relevant to a claim. [Doc. No. 51 at 28 (citing 36 Okla. Stat. §§ 1250.5(1), (2))].

The Court must examine the relationship of the UCSPA to a bad faith claim. As correctly stated by AEIC, the UCSPA does not create a private right of action. [*See* Doc. No. 55 at 6 (citing *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of Lond.*, 2015 OK CIV APP 34, ¶ 24, 348 P.3d 216, 223–24)]. "Oklahoma courts recognize that—even though the UCSPA does not provide a private right of action—a bad-faith claim can be predicated on the insurer's failure to conform to the UCSPA's standards of care." *Klintworth v. Valley Forge Ins. Co.*, No. 21-5029, 2022 WL 1021750, at *5 (10th Cir. Jan. 31, 2022) (unpublished). However, the Tenth Circuit has indicated that failure to comply with the UCSPA alone cannot constitute bad faith. *Id.* at *6. Instead, the insurer's conduct must rise to the requisite level of culpability for bad faith, which is more than simple negligence. *Id.* ("This minimum level of culpability is something 'more than

20

simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer.'" (citing *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 28, 121 P.3d 1080, 1094, *as corrected* (June 22, 2005)). To survive summary judgment on a bad faith claim predicated upon the UCSPA, Plaintiffs need to show that AEIC's failure to disclose coverage amounted to an unfair settlement practice, and (2) AIEC's "culpability is more than simple negligence." *Id.* (citing 36 Okla. Stat. § 1250.5). If AEIC can negate either element, it is entitled to summary judgment.

The Court, therefore, must examine the summary judgment evidence regarding AEIC's failure to advise Plaintiffs of their coverage to determine if it exceeds negligence. Regarding AEIC's failure to advise Plaintiffs of the Matching Provision, the Court concludes a genuine issue of material fact exists regarding whether AEIC's failure to advise them of the Matching Provision exceeded simple negligence. When Plaintiffs were preparing to repair the roof, the summary judgment evidence demonstrates that an area of concern was a mismatch between the existing shingles and the new shingles. [*See* Doc. No. 51-3, Chiarello Dep. at 23–25, 157:4–159:22 (testifying it was conceivable a concern would exist regarding a mismatch between thirteen-year-old shingles and new shingles due to weathering); Doc. No. 51-5, Brett Neil Aff. ¶¶ 6–8 (summarizing efforts to secure matching shingles because of concern that a partial repair would result in a mismatch)]. That, coupled with the fact that a mismatch did occur, is enough to raise a genuine issue of material fact regarding whether AEIC was beyond negligent in failing to advise Plaintiffs of the Matching Provision. [*See* Doc. No. 51-11, Expert Report of Harry E. Coates, Jr., at 5 ("The partial replacement of shingles does not meet industry standard and

21

would require a full roof replacement to achieve proper matching shingles and a reasonably uniform appearance as stated in the Policy as well as industry standard.")]. The Court, therefore, denies AEIC's Motion regarding whether AEIC committed bad faith by failing to advise Plaintiffs of the Matching Provision.

Regarding AEIC's failure to advise Plaintiffs of coverage for Additional Living Expenses under the Policy, the Court concludes AEIC is entitled to summary judgment. The summary judgment evidence demonstrates that AEIC tried to provide temporary housing for Plaintiffs. [*See* Doc. No. 34-2 at 6, Sept. 15, 2023 entry]. Plaintiffs do not dispute that AEIC advised them of coverage for housing but instead argue AEIC "never mentioned any other ALE benefits other than housing and accommodations as stated in claim file." [Doc. No. 51 at 22, ¶ 49]. AEIC disputes that by providing a transcript of Plaintiff Lauren Saxon's initial interview about Plaintiffs' claim, during which AEIC advised her that the Policy covered "a wide variety of things" including if Plaintiffs needed to go out to dinner because they could not cook. [Doc. No. 55-3 at 19–20 (18:730–19:764)]. Therefore, to the extent that Plaintiffs claim the adjuster did not fully advise them of every aspect of their coverage for Additional Living Expenses, the Court concludes the summary judgment evidence does not reflect culpability beyond simple negligence. Accordingly, the Court grants summary judgment on this issue.

### 2.    AEIC's denial of coverage for Plaintiffs' personal property

The Court next turns to whether AEIC is entitled to summary judgment on Plaintiffs' claim that it committed bad faith by denying coverage for their personal property contaminated with asbestos. As discussed above regarding Plaintiffs' breach

22

claim on this same ground, AEIC had a legitimate reason for denying coverage under the Policy, which Plaintiffs have not successfully negated. Accordingly, AEIC had a "good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy." *Buzzard v. McDanel*, 1987 OK 28, ¶ 10, 736 P.2d 157, 159 (emphasis omitted).

Plaintiffs argue that AEIC has "a non-delegable duty of good faith while performing claims management, adjustment, and settlement functions." [Doc. No. 51 at 29–30 (citing *Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, 2014 OK 106, ¶ 29, 341 P.3d 75, 86)]. However, Plaintiffs fail to explain how AEIC's engagement of Stanley Steemer to repair damage to Plaintiffs' house constitutes delegation of claims management, adjustment, or settlement, such as when an insurer hires an adjuster to investigate an insured's claims. *See, e.g.*, *Trinity Baptist Church*, 2014 OK 106, ¶ 30, 341 P.3d at 86 (concluding insured is liable for an adjuster's mishandling of claims via its duty of good faith). Plaintiffs do not cite language in the Policy that requires AEIC to conduct repairs. Nor do Plaintiffs cite relevant Oklahoma caselaw supporting their argument that AEIC's duty of good faith includes overseeing or performing repairs to the property.

Having concluded that AEIC denied coverage for personal property contaminated with asbestos due to a legitimate dispute regarding coverage, the Court turns to whether Plaintiffs have presented additional evidence of bad faith—either a sham justification or a failure to properly and timely investigate Plaintiffs' claim. Plaintiffs do not argue, or present summary judgment evidence, that AEIC presented either a sham justification or

23

failed to properly or timely investigate Plaintiffs' claim regarding its personal property. [*See* Doc. No. 51 at 29–30].

For these reasons, the Court grants AEIC's Motion regarding Plaintiffs' bad faith claim pertaining to their personal property contaminated by asbestos.

### 3.    AEIC's disregard of Plaintiffs' experts' opinions

Plaintiffs' final ground for bad faith is that AEIC disregarded Plaintiffs' HVAC specialist and Plaintiffs' roofing expert. [Doc. No. 51 at 31]. Plaintiffs' roof expert opined that Plaintiffs needed a full roof replacement, and Plaintiffs' HVAC specialist attributed the damage to the HVAC to power surges caused by a storm. [*Id.*]. Plaintiffs argue that AEIC did not reasonably investigate Plaintiffs' claims. [*Id.* at 31–32]. Specifically, Plaintiffs state that AEIC either overlooked material facts or intentionally disregarded undisputed facts. [*Id.* at 31 (citing *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436–37 (10th Cir. 1993))].

Contrary to Plaintiffs' arguments, the undisputed material facts demonstrate that AEIC did not overlook the opinions of Plaintiffs' experts and did consider them. Regarding Plaintiffs' roof expert, AEIC's adjuster requested his estimate and supporting documents. [*See* Doc. No. 34 ¶ 37; Doc. No. 51 ¶ 37]. After receiving the estimate, the adjuster requested supporting photographs from the contractor. [*See* Doc. No. 34 ¶ 51; Doc. No. 51 ¶ 51]. The adjuster reviewed the estimate and photos and concluded a full roof replacement was not warranted and explained that decision to Plaintiffs. [*See* Doc. No. 34 ¶¶ 53–54; Doc. No. 51 ¶¶ 53–54]. AEIC even increased its coverage as a result of its review. [*See* Doc. No. 34 ¶ 55; Doc. No. 51 ¶ 55]. Regarding Plaintiffs' HVAC

specialist, AEIC's HVAC adjuster reviewed the report of Plaintiffs' HVAC specialist and provided a supplemental report in response. [*See* Doc. No. 34 ¶ 63; Doc. No. 51 ¶ 63]. Accordingly, the material, undisputed facts do not support Plaintiffs' allegations that AEIC ignored the reports of its experts. The Court, therefore, grants summary judgment to AEIC on this ground for bad faith.

### C.    The Court denies AEIC's Motion regarding punitive damages.

AEIC moves the Court to grant summary judgment on Plaintiffs' request for punitive damages. [Doc. No. 34 at 28–29]. Plaintiffs argue that their request is not subject to summary judgment because they seek a remedy and the request does not constitute an independent claim. [Doc. No. 51 at 32].

Oklahoma provides for punitive damages by statute, which requires clear and convincing evidence that the defendant acted with reckless disregard for the rights of others or in reckless disregard of its duty of good faith and fair dealing. 23 Okla. Stat. § 9.1(B). As correctly pointed out by Plaintiffs, the statute requires the jury to make this determination. [*See* Doc. No. 51 at 33 (citing 23 Okla. Stat. §§ 9.1(B)(2), (C)(2))]. The Court, however, acts as a gatekeeper for this issue, determining if the evidence is sufficient to submit the issue to the jury. *Badillo*, 2005 OK 48, ¶ 66, 121 P.3d at 1106. Because, as discussed above, fact issues remain regarding Plaintiffs' claims, the Court declines to address the issue of punitive damages at this stage and instead will address whether to submit the issue to the jury at the conclusion of trial with "the benefit of a complete record." *Accord Jackson v. State Farm Fire & Cas. Co.*, No. CIV-24-5-D, 2025 WL 2671562, at *5 (W.D. Okla. Sept. 17, 2025) ("Based on the summary judgment

25

record, the Court finds that a summary adjudication on punitive damages would be premature, and the Court will instead rule on whether punitive damages will be submitted to the jury based on the evidence offered at trial and with the benefit of a complete trial record."). Therefore, AEIC's Motion is denied regarding punitive damages.

## V.    **CONCLUSION**

For the reasons outlined above, the Court GRANTS in part and DENIES in part AEIC's Motion for Summary Judgment.

The Court GRANTS AEIC's Motion regarding Plaintiffs' breach of contract claim regarding (1) AEIC's denial of Plaintiffs' claim for personal property damaged by asbestos and (2) AEIC's handling of Plaintiffs' claim for Additional Living Expenses. The Court DENIES the Motion regarding Plaintiffs' breach of contract claims regarding (1) AEIC's coverage regarding Plaintiffs' roof repairs and (2) AEIC's denial of coverage for repair to Plaintiffs' HVAC unit.

The Court GRANTS AEIC's Motion regarding Plaintiffs' bad faith claims regarding (1) AEIC's failure to advise Plaintiffs of coverage for Additional Living Expenses, (2) AEIC's denial of coverage related to its personal property contaminated by asbestos, and (3) AEIC's disregard of Plaintiffs' expert reports. The Court DENIES AEIC's Motion regarding Plaintiffs' bad faith claims regarding AEIC's failure to advise Plaintiffs of coverage provided by the Matching Provision.

Finally, the Court DENIES AEIC's Motion to the extent it seeks summary judgment on Plaintiffs' punitive damages request.

26

IT IS SO ORDERED this 30th day of March 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE